UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JIMMY LEE BENSON,<br><br>          Plaintiff,<br><br>     v.<br><br>J. HINOJOSA, *et al.*,<br><br>          Defendants. | Case No. 1:26-cv-01442-EPG (PC)<br><br>SCREENING ORDER<br><br>ORDER ALLOWING PLAINTIFF'S COMPLAINT TO PROCEED ON EIGHTH AMENDMENT CLAIM OF EXCESSIVE FORCE AGAINST DEFENDANTS HINOJOSA, PALOMARES, TAPIA-BACA AND FAILURE TO PROTECT AGAINST DEFENDANT TAPIA-BACA<br><br>(ECF No. 1) |

Plaintiff Jimmy Lee Benson is a state prisoner proceeding *pro se* and *in forma pauperis* in this civil rights action filed pursuant to 42 U.S.C. § 1983. (ECF Nos. 1, 7). On February 19, 2026, Plaintiff filed a complaint alleging that his constitutional rights were violated when correctional officers forcibly extracted him from his cell and then repeatedly punched him in the face and ribs.

The Court has reviewed Plaintiff's complaint, and for the reasons described below, the Court finds that the following claims should proceed past screening: Eighth Amendment excessive force against Defendants J. Hinojosa, E. Palomares, and M. Tapia-Baca, and Eighth Amendment failure to protect against Defendant Tapia-Baca.

As the Court has found that all of Plaintiff's claims in the complaint should proceed past screening, the Court will, in due course, issue an order authorizing service of process on

1

Defendants J. Hinojosa, E. Palomares, and M. Tapia-Baca.

## I.     SCREENING REQUIREMENT

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). The Court must dismiss a complaint, or a portion of it, if the prisoner raises claims that are frivolous or malicious, that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b)(1), (2). Because Plaintiff is proceeding *in forma pauperis* (ECF No. 7), the Court may also screen the complaint under 28 U.S.C. § 1915(e)(2)(B)(i-iii), which directs the Court to dismiss a case at any time if the Court determines that it is frivolous or malicious, fails to state a claim, or seeks relief against an immune defendant.

A complaint is required to contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Plaintiff must set forth "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id*. (quoting *Twombly*, 550 U.S. at 570). The mere possibility of misconduct falls short of meeting this plausibility standard. *Id.* at 679. While a plaintiff's allegations are taken as true, courts "are not required to indulge unwarranted inferences." *Doe I v. Wal-Mart Stores, Inc*., 572 F.3d 677, 681 (9th Cir. 2009) (citation and quotation marks omitted). Additionally, a plaintiff's legal conclusions are not accepted as true. *Iqbal*, 556 U.S. at 678.

Pleadings of *pro se* plaintiffs "must be held to less stringent standards than formal pleadings drafted by lawyers." *Hebbe v. Pliler*, 627 F.3d 338, 342 (9th Cir. 2010) (holding that *pro se* complaints should continue to be liberally construed after *Iqbal*).

## II.     SUMMARY OF PLAINTIFF'S COMPLAINT

Plaintiff is an inmate currently housed at the Substance Abuse Treatment Facility ("SATF") in Corcoran, California. (ECF No. 1 at 1). On February 19, 2026, Plaintiff filed a complaint and named three defendants including Correctional Officers J. Hinojosa, E. Palomares,

2

and M. Tapia-Baca. Plaintiff alleges the following:[1]

On Sunday, August 25, 2024, around 8pm while housed in facility "D," Building B, I started to experience chest pains. My chest felt as though an elephant was sitting upon it. So I started to yell "man down" out of my cell (282) door. After yelling for about 5 to 10 minutes or so, an officer (C/O Hinojosa) approached the door. After explaining my symptoms to him, he announced…a medical emergency and requested an emergency response vehicle (ERV) to respond. However, as we were waiting C/O Hinojosa started to make comments that I was faking. I felt offended that he was not taking my medical emergency seriously, so I informed him that I have asthma and that I've been out of my inhaler medication for a while now. He then pulled out his cuffs and told me that I needed to put on restraints. I said "for what, we are not in ad-seg nor are we on any lockdown" so I will not be cuffing up nor should I have to be placed in handcuffs for a medical emergency. C/O Hinojosa's attitude went from being concerned for my health to treating me as if he didn't care what occurred next. I then became concerned myself. He then ordered the control booth, C/O K. Perez, to open the door. Once the door opened, C/O Hinojosa locked the door open and grabbed my arms around with his left hand. Not sure why he then became so aggressive, I stood my ground, backed away further inward into the cell, stating that I will not cuff up. He (C/O Hinojosa) then partially entered the cell and wrapped his arms around my upper torso pulling me out of the cell, which caused me to fall forward on top of C/O Hinojosa. That is how much force he pulled me out with to where we both fell, and I fell on top of him.

While I was laying on top of C/O Hinojosa, he still had his arms wrapped around my torso and another officer (C/O E. Palomares) ran up striking me in my face with a closed fist. C/O Hinojosa also struck me in my facial area with a closed fist. Once I was placed on my chest and stomach (C/O Hinojosa, C/O E. Palomares, and another officer by the name of C/O M. Tapia-Baca) used that opportunity to punch me in my ribs and facial area, which lasted for a minute or so.

I was then placed in restraints (handcuffs and waist chains) in order to be evaluated by medical. However, even after I was placed in restraints, C/O Hinojosa was applying pressure upon my body to the point where the Sergeant (Sergeant M. Hernandez) instructed him to remove himself away from me and from the area.

(*Id.* at 3-4). While Hinojosa had his arms wrapped around Plaintiff's body:

C/O E. Palomares continued to act as though he was trying to get control of my hands when in fact he was striking me repeatedly with his closed fist

---

[1] For readability, minor alterations, like changing capitalization, have been made to some of Plaintiff's quotations without indicating each change.

upon my body. Once the responding staff approached, C/O E. Palomares moved down toward my foot area, applied great force and pressure on my ankles. I was screaming that I was in pain and hoping that he would release a little pressure off my ankles but instead C/O E. Palomares applied more pressure while stating that I was still resisting when I clearly was not. I was screaming the entire time that "I am not resisting. I am not resisting." However, once I was in restraints, that is when C/O E. Palomares slowly released a little pressure on my ankles.

(*Id.* at 5).

When I was being assaulted by staff after requesting medical attention, C/O Tapia-Baca, upon responding to a "Code 1" medical emergency…, C/O Tapia-Baca witnessed C/O Hinojosa partially entering my cell in order to pull me out and once that occurred C/O M. Tapia-Baca also witnessed that I was pulled out with such force to where I fell on top of C/O Hinojosa but instead of assisting and stopping C/O Hinojosa and C/O Palomares from their continued assault, C/O Tapia-Baca also repeatedly started punching me in my ribs and facial area as well. C/O M. Tapia-Baca only stopped his actions once more responding staff started to enter the building.

(*Id.* at 6).

Plaintiff alleges that he now has back pain with impaired mobility because of his right knee and left leg pain. As a result of Defendants' conduct, Plaintiff needs a cane to assist in walking and takes "mental health pills." (*Id.* at 3, 5-6). Plaintiff seeks $25,000 in compensatory damages from each Defendant, with an additional $10,000 in punitive damages from Defendant Tapia-Baca for failing to protect him.

III.    **ANALYSIS OF PLAINTIFF'S COMPLAINT**

A.    **Section 1983**

The Civil Rights Act under which this action was filed provides as follows:

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

42 U.S.C. § 1983. "[Section] 1983 'is not itself a source of substantive rights,' but merely provides 'a method for vindicating federal rights elsewhere conferred.'" *Graham v. Connor*, 490 U.S. 386, 393-94 (1989) (quoting *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979)); *see also Chapman v. Houston Welfare Rights Org.*, 441 U.S. 600, 618 (1979); *Hall v. City of Los Angeles*,

697 F.3d 1059, 1068 (9th Cir. 2012); *Crowley v. Nevada*, 678 F.3d 730, 734 (9th Cir. 2012); *Anderson v. Warner*, 451 F.3d 1063, 1067 (9th Cir. 2006).

To state a claim under § 1983, a plaintiff must allege that (1) the defendant acted under color of state law, and (2) the defendant deprived him of rights secured by the Constitution or federal law. *Long v. County of Los Angeles*, 442 F.3d 1178, 1185 (9th Cir. 2006); *see also Marsh v. County of San Diego*, 680 F.3d 1148, 1158 (9th Cir. 2012) (discussing "under color of state law"). A person deprives another of a constitutional right, "within the meaning of § 1983, 'if he does an affirmative act, participates in another's affirmative act, or omits to perform an act which he is legally required to do that causes the deprivation of which complaint is made.'" *Preschooler II v. Clark County Sch. Bd. of Trs.*, 479 F.3d 1175, 1183 (9th Cir. 2007) (quoting *Johnson v. Duffy*, 588 F.2d 740, 743 (9th Cir. 1978)). "The requisite causal connection may be established when an official sets in motion a 'series of acts by others which the actor knows or reasonably should know would cause others to inflict' constitutional harms." *Preschooler II*, 479 F.3d at 1183 (quoting *Johnson*, 588 F.2d at 743). This standard of causation "closely resembles the standard 'foreseeability' formulation of proximate cause." *Arnold v. Int'l Bus. Mach. Corp.*, 637 F.2d 1350, 1355 (9th Cir. 1981); *see also Harper v. City of Los Angeles*, 533 F.3d 1010, 1026 (9th Cir. 2008).

A plaintiff must demonstrate that each named defendant personally participated in the deprivation of his rights. *Iqbal*, 556 U.S. at 676-77. In other words, there must be an actual connection or link between the actions of the defendants and the deprivation alleged to have been suffered by the plaintiff. *See Monell v. Dep't of Soc. Servs. of City of N.Y.*, 436 U.S. 658, 691, 695 (1978).

### B.    Excessive Force

"In its prohibition of 'cruel and unusual punishments,' the Eighth Amendment places restraints on prison officials, who may not … use excessive physical force against prisoners." *Farmer v. Brennan*, 511 U.S. 825, 832 (1994). "[W]henever prison officials stand accused of using excessive physical force in violation of the [Eighth Amendment], the core judicial inquiry is … whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson v. McMillian*, 503 U.S. 1, 6-7 (1992).

When determining whether the force was excessive, the Court looks to the "extent of injury suffered by an inmate…, the need for application of force, the relationship between that need and the amount of force used, the threat 'reasonably perceived by the responsible officials,' and 'any efforts made to temper the severity of a forceful response.'" *Hudson*, 503 U.S. at 7 (quoting *Whitley v. Albers*, 475 U.S. 312, 321 (1986)). While de minimis uses of physical force generally do not implicate the Eighth Amendment, significant injury need not be evident in the context of an excessive force claim, because "[w]hen prison officials maliciously and sadistically use force to cause harm, contemporary standards of decency always are violated." (*Id.* at 9).

Based on the allegations in Plaintiff's complaint, summarized above, the Court finds that Plaintiff sufficiently states a claim for excessive force against Defendants Hinojosa, Palomares, and Tapia-Baca to proceed past screening.

### C.    Failure to Protect

To establish a failure to protect claim, a prisoner must establish that prison officials were deliberately indifferent to a sufficiently serious threat to the prisoner's safety. *Farmer*, 511 U.S. at 837. "'Deliberate indifference' has both subjective and objective components." *Labatad v. Corr. Corp. of Am.*, 714 F.3d 1155, 1160 (9th Cir. 2013). A prisoner must show that "the official [knew] of and disregard[ed] an excessive risk to inmate ... safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and [the official] must also draw the inference." *Farmer*, 511 U.S. at 837. "Liability may follow only if a prison official 'knows that inmates face a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it.'" *Labatad*, 714 F.3d at 1160 (quoting *Farmer*, 511 U.S. at 847). When an officer is alleged to have used excessive force against a prisoner, other correctional officers may also be held liable if they had a realistic opportunity to intervene and stop the violation but failed to do so. *See Lolli v. County of Orange*, 351 F.3d 410, 418 (9th Cir. 2003); *Cunningham v. Gates*, 229 F.3d 1271, 1289-90 (9th Cir. 2000). Thus, a plaintiff must allege that defendants were (1) aware that plaintiff faced a specific risk of harm from the correctional officer's use of excessive force, and (2) had a reasonable opportunity to intervene to stop it. *See id.*

Based on Plaintiff's allegations, summarized above, the Court finds that Plaintiff's Eighth

6

Amendment failure to protect claim against Defendant Tapia-Baca should proceed past screening.

## IV.    CONCLUSION AND ORDER

The Court has screened Plaintiff's complaint and finds that Plaintiff's Eighth Amendment excessive force claims against Defendants Hinojosa, Palomares, and Tapia-Baca, and Eighth Amendment failure to protect claim against Defendant Tapia-Baca should proceed past screening.

As the Court has found that all of Plaintiff's claims should proceed past screening, the Court will, in due course, issue an order authorizing service of process on Defendants Hinojosa, Palomares, and Tapia-Baca.

IT IS SO ORDERED.

Dated:   __**April 8, 2026**__                    /s/ _Erica P. Grosjean_
                                                   UNITED STATES MAGISTRATE JUDGE